Good morning everyone. We're here today for oral arguments. We're going to begin with Appeal 23-2421 United States v. James Harris and Mr. Roy will begin with you. Thank you Judge Brennan. Good morning. May it please the court, opposing counsel, my name is Michael Roy on behalf of Appellant James Harris. This court should vacate Harris's revocation judgment and remand with instructions to and hold a new evidentiary hearing on the more serious violation of a breaking the new law. I'll start with the jurisdictional question on the technical violations. This comes down to two issues of statutory interpretation. The first is under section 3624E, what is meant by a imprisonment quote in connection with a 624E only imprisonment connected with some other conviction. At the same time the statute also says that other terms of supervision, including other terms of state supervision, run concurrently to federal supervision. As this court explained in Block, a revocation of federal supervised release is just a determination on how that supervised release is served. So you're serving the supervised release in federal prison. Illinois supervised release is material and all relevant, is relevant in all material respects to federal supervised release. Just like federal supervised release, it's a separate sentence served after completing the prison term. Revocation is a decision on how to serve that supervision. So it falls more within 3624E's language about a supervision period running concurrent to the federal supervision. And when you're revoked under Illinois state supervised release, it's not a imprisonment as for a breach of the court's trust, and it's an imprisonment on the supervision term. This court's decision in Miranda, I believe also supports my interpretation of 3624E. In Miranda, it was someone who had served their federal prison term, and everyone agreed that they had completed their term of imprisonment, but their release from the BOP was put on hold pending civil commitment proceedings. So in an attenuated sense, the defendant in Miranda's imprisonment was in connection to his earlier conviction. He was only in the BOP in the first place because of an earlier conviction, but when looking at the period of time after the prison term ended and he was just being held pending civil commitment proceedings, this court focused on the difference between 3624E's commencement provision and its tolling provision. It focused on the commencement provision was broader, didn't have the provision that had to be in connection with a conviction to say that that's why it commenced when he got released from the BOP instead. The implication being that if it was instead being construed under the narrower tolling provision, that period of confinement where he was still in BOP but had finished his technical term of prison would not have counted as imprisonment in connection with the conviction. Doesn't Montt tell us to construe in connection with broadly? It does say that it's construed broadly, but I have a couple of responses to that. The first is the only holding of Montt is that for sure any time that is credited towards a conviction counts as imprisonment in connection with the conviction, and then they go on to say that they're not deciding the outer bounds of in connection with in Montt. So Montt says that if your imprisonment is sufficient but maybe not necessary for crediting it. I would also point then to later on page 1833 of Montt where Justice Thomas is discussing in section B the text of 3624E itself, and he draws the distinction between the tolling provision talking about imprisonment in connection with running concurrently to federal supervised release, and that's the distinction that matters here because Harris's imprisonment in the IDOC was part of his supervision in state court. So it was a term of state supervision. It falls under that clause of 3624E instead. I do want to point out the government points out some cases from other circuits where parole revocations were determined to toll under 3624E. Our argument is that those cases aren't applicable because parole and supervised release are just structurally different. As Justice Gorsuch explained in Hammond, and as this court has said in Thompson and other cases, supervised release is not part of the original sentence of imprisonment for a conviction. It's a separate penalty served after prison time is completely finished. Parole, back when federal system had parole, was a like act of grace to allow someone released during their term of imprisonment, and they would suspend the term of imprisonment. When a parolee was revoked, they were not serving their parole in prison. They were going back and serving their original imprisonment that was part of the original conviction. Completely different than supervised release where a revokee is going back to Salvation Army facility. Is the purpose behind that release to address drug issues? What's the purpose as to why Harris goes to Salvation Army? I do have one quibble with that, which is it wasn't the revocation. It was still his detention pending the revocation hearing. He was not revoked yet until later with Judge Tharp. The purpose was that he became homeless. As it later came up at the evidentiary hearing, I believe it was the evidentiary hearing, he was sharing housing with his cousin, his cousin or brother, and they fell behind on rent. They got evicted. He was homeless, and he didn't have anywhere to go, so they briefly detained him, and then once they found new housing for him, they let him up basically immediately. Of course, the housing was a shelter, and almost any shelter is going to have rules, and especially shelters for people on detention like Mr. Harris, it's often going to be tied to drug treatment or other things. Of course, Mr. Harris does have drug problems. There's no dispute about that. That's part of what his supervision violations were. Thank you. Yeah. Also, I do want to emphasize that those earlier hearings were not to reserve jurisdiction after the supervision expired. That's the other aspect of our jurisdictional argument is how 3583I should be construed. The statute establishes three things. First, it sets a time when the district court's jurisdiction expires, and that's when the supervision expires. Second, it sets one exception to that jurisdictional requirement, which is that jurisdiction can continue past the expiration when the judge has issued a timely warrant or summons. And then the third aspect is it creates an exception to that exception or a limitation on that exception that the warrant requirement only extends jurisdiction as reasonably necessary to decide issues that were raised before expiration of the supervision. As Judge Garwood explained in his dissent in the Ronhoe, and as the Ninth Circuit explained in their construction of the statute, the matters arising before expiration clause in 3583I suggests that the warrant must refer either to the specific issues for which the supervisee will be revoked or at least issues that are factually similar. Otherwise, it wouldn't make any sense for Congress to limit jurisdiction to only those matters that were raised before expiration of supervision if then after supervision expired, you could file a new summons asserting completely different matters and then bring those matters into jurisdiction. I do also want to emphasize that this court has already held at least twice that 3583I's provisions are jurisdictional. It's not claim processing or anything like that. Unless the court has any further questions about the jurisdictional argument, I'd like to move on to Mr. Harris's admission to the technical violations. That's fine. So of course this is not an initial prosecution. Rule 11 doesn't apply. There's no requirement for a colloquy for someone like a guilty plea. However, basic principles of due process still apply to revocation hearings and waivers of one's right to challenge alleged violations must be knowing and voluntary. Myself and the government, we disagree on the standard of review. I think that the government's argument that the review is not de novo because it was either forfeited or waived, it sort of misses the point because our entire argument is whether the waiver was valid or not. So it's more akin to a waiver of one's right to appeal where it's kind of binary, right? This court reviews it de novo. Either there's a valid waiver or there's not a valid waiver. As this court has said in LeBlanc, equivocal statements do not count to waive one's right to challenge violation. That's what we have here. The trial attorney, he basically equivocated and said we're not in a position to challenge these violations. That's not the same thing as saying we do not challenge the violations or we admit the violations. Later when trial counsel said we agree with all the allegations in the Salvation Army report, Mr. Harris interrupted, said that's a lie. The government points to no case where a court has found that a admission to a violation was valid despite an outburst like this from the defendant during the proceedings. And I just want to point out that to remedy this would have been extremely simple. It would have been trivial for either the judge or for the prosecution to just step in say what do you mean by that or ask for a clarification. I mean we're not going to argue the judge needs a hold a colloquy with Mr. Harris because of course the judge didn't need to. But all it would have taken was one question. Do you agree with your lawyer that you are not challenging this violation? If he said yes, this wouldn't be an issue on appeal. And then our last argument is regarding the gun violation. This is the more serious violation. I do want to point out though that now that the government has withdrawn its arguments about the concurrent sentencing doctrine, if this court decides that finding a violation on the more technical violations should be vacated, the whole thing should go back for resentencing because it's a package sentencing deal. But in terms of the the new gun conviction, this is not the most open-and-shut case of someone committed a new violation. He went to a jury trial in the state court. He was acquitted. A jury found the gun owner credible, found his story credible that he didn't know about the gun in the case, found his story credible, agreed that yes, he only had the purse because he was returning it for someone else. The judge's finding was essentially that while he was in the process of returning the purse, he looked inside and he knew it wasn't a gun and at that point he was in no possession. And key to the judge's finding is the credibility of determination. The whole issue at revocation was is his story true or not, that he didn't know about the gun. The I think it's fundamentally flawed because he points to his trial attorney's closing arguments as a version of Mr. Harris changing its story. Of course the government argues that the the court understood the distinction between trial counsel's arguments and Mr. Harris's statements, but I don't think that's clear from the transcripts and context. And also if the court did understand the distinction, it's not clear why a trial counsel's arguments to a jury should be held as an example of Mr. Harris himself changing his stories or being inconsistent. As this court knows from reading many jury transcripts, trial counsel often makes arguments shaped by what holes they see in the evidence, not by what their client's actual theory of defense is. And unless there's further questions, I'll save them. Mr. Roy, what more would you want the district court to have found with regard to the gun violation? It's not so much that the court needed to find more because we're not arguing about how the court weighed the evidence. It's the procedural issue that the court relied on a misapprehension of the record. If the judge had said, if the judge had, say, you know, turned down the government's argument about trial counsel's arguments and said, well that doesn't go towards anything. However, I still find he knowingly possessed the arguments on appeal because that would be just deferring to the judge on weighing the evidence. But it's here, it's where the judge pointed to something, was an inaccurate reading of the record, and that's a procedural error. I think a good example of where the judge did something correctly is talked about him holding the bag in a cross-body fashion, but then said, yes, that is slightly probative, but really that doesn't go towards anywhere because, like, I wore my briefcase in a cross-body fashion on the way into court. Like, the judge recognized that that wasn't probative. If the judge had done that with the arguments about him being inconsistent with statements, that would be more weighing evidence versus a procedural error. Thank you, Mr. Troy. We will give you rebuttal time. All right, thank you, Judge. Thank you. Mr. Kirwan, we'll move to you now on behalf of the government. Good morning, and may it please the court. Brian Kirwan from the United States. Your Honors, the district court had jurisdiction to revoke the defendant's term of supervised release when it did so on July 14, 2023. The plain language of Section 3624E's tolling provision makes clear that a term of federal supervised release is told during any period in which the person is imprisoned in connection with a conviction for a federal, state, or local crime. That was the case here where a defendant spent five months in the custody of the Illinois Department of Corrections in a state case for possessing heroin. And if I can direct the court's attention to docket 607-1 in the district court, you'll see the IDOC records in that case that show that that period of five months was served in that underlying CR number in that state conviction for heroin. There is really, I think, no legitimate dispute that the defendant was imprisoned because, as the Montt case says, and Judge Kohler alluded to Montt, to be imprisoned is to serve time in prison or to be incarcerated. And Block itself does not interpret the phrase in connection with. Montt does and says that that's to be given a broad construction. And so we know based on the plain language that his detention in the Illinois Department of Corrections falls within the plain text of 3624E. The only question, I think, is whether Block carves out an exception for that time. And the reason that we know it does not is because it's just fundamentally distinct. And so to put a slightly finer point on it, Block does have application in this case, but it doesn't apply to that five-month period when he's in custody downstate in a completely different case in a different jurisdiction. It applies in this case when Judge Feinerman, in the fall of 2022, after the defendant was discharged from the Salvation Army, he entered an order that required him to be detained at the MCC. And he went to the MCC and he stayed there from November of 22 through the conclusion of the revocation proceedings in July. That eight-month period is the period that Block says is an opposite when you're talking about section 3624E's tolling provision because the term of federal supervised release cannot toll itself. Because at that point in time, he's serving the term that was already imposed earlier in the case. And so that carve-out applies to that eight-month period, not to the five months served in a different case in a different jurisdiction. I think that's made even clearer by Block's citation to the Third Circuit's case in Cole, which says, consistent with the First, the Second, the Fifth, Eighth, and Ninth Circuits, that the tolling provision applies when a defendant is imprisoned in connection with another conviction or another offense. My friend on the other side cites to the Miranda case as helping his position. I think it cuts very clearly in the other direction. Miranda interpreted 3624E's earlier sentence that supervised release commences when a defendant is released from prison in a quite literal way. It starts when the defendant is released and in the next sentence it says it is told when a defendant is imprisoned in connection with a conviction for a state crime. I mean, that is plainly the case here. In terms of the parole cases, we were unable to find a circumstance where a challenge exactly like this one was brought to Federal Court of Appeals involving supervised release. But those parole cases, that's the Busey case in the Second Circuit and the Jackson case in the Fifth Circuit, their holdings are not tethered to anything unique about parole as opposed to supervised release. The Jackson case says that parole revocation tolls a federal supervision term precisely because it's a consequence of the underlying conviction. And we know that is true with respect to the five months he served in IDOC with respect to the heroin convictions. The Fifth Circuit says something similar. It says the statute says is imprisoned in connection with a conviction and it states no exceptions. Unless the court has any  provision, I'd like to move on to the warrant hook that even setting aside tolling gave the district court jurisdiction to hear not just the gun violation in the summer of 2023, but all of the matters arising before the expiration of the term. Let's talk a little bit about that. Why would the July 28th 2020 bench warrant extend to Harris's misconduct or alleged misconduct of the Salvation Army if it referenced a special report that only was connected to the gun? Well I think the plain language is the reason because the plain language of 3583I says that the power of the court to revoke a term of supervised release for violation of a condition extends beyond the expiration of the term for the adjudication of matters, plural, arising before its expiration if before its expiration a warrant has been issued on the basis of such a violation. And so I think the plain language of that statutory provision answers your question, Judge, but the practical implications that I think are evident from this record confirm why that's the case. And what I mean by that is when that report issued on violation number eight, that was in January of 2023. As I said, Judge Feinerman had already sent the defendant to the MCC to be detained and so the thought that Judge Feinerman would need to issue a second bench warrant at that point in time to preserve his jurisdiction to revoke the defendant for that violation doesn't make any practical sense because he's already detained, right? If you issue a bench warrant you're not going to issue seven more throughout the case each time there's a new technical violation. And you know I expect perhaps defense counsel will argue well he should have issued a summons. Well as we know from the record defendant and the government agreed that this gun violation should be adjudicated after the state case resolved for a variety of reasons. They determined that that was the correct course. The judge did not dispute that. And so the purpose of the summons is to haul the defendant in for that revocation hearing but it was premature at that time. And so there's really no practical way for the court to gain jurisdiction in the way that defendant is proposing he would need to do. You know I would be remiss not to point out that in that the Ninth Circuit case Campbell and the Second Circuit case Edwards that either contemplate in the Second Circuit case or impose a rule in the Ninth Circuit case that the post-expiration allegations have to be factually related to the allegations that arose before. Those cases presented a very different circumstance where the allegations in the violation report that you're referencing Judge Brennan were never brought to the court's attention. And so the violations that were adjudicated post-expiration as I read those cases were never the subject of a you know let alone a summons. And so the the Ninth Circuit phrased it as you know the issue being does a court have authority to revoke a defendant for matters that were never brought to its attention during the term. More of a notice circuit. Correct. And the Second Circuit in Edwards says it's a there was no pre-expiration notice triggering event or something along those lines. And it was very it's very clear I think from the language of the Ninth Circuit's decision in Campbell that notice was motivating that result. And so this is sort of a situation that is different than those those cases and frankly it's different than even the Fifth Circuit's case in Naranjo because it was the same circumstance there as I read that case. But Naranjo said even still the plain language of 3583I says matters prior to the expiration and such a violation suggests that it all comes in. And I that you know is it harmless error for the court to even if it wasn't allowed to formally violate the defendant on violation number eight was he was he allowed to consider the conduct. And of course he was because this court has said repeatedly it's it's beyond dispute that at a sentencing revocation hearing the court is to properly calculate the guidelines which here it was entirely driven by the gun violation because that was the higher class of violation. And then consider the 3553A factors in devising an appropriate sentence. And so the thought that that Judge Tharp at the revocation hearing was supposed to completely ignore this very probative 3553A material that is use of you know narcotics at Salvation Army when he was under a court order. It just doesn't it just doesn't comport with the practical realities of sentencing. Of course the judge is going to consider that conduct and is allowed to factor it in just like he did the fight at the MCC which was not formally alleged in any violation report but it speaks to the defendant's history and characteristics the need to promote respect for the law and so forth. I'd like to address the procedural arguments defendant raises as well with my remaining five minutes. And I'll start with the notion that the defendant did not you know knowingly involuntarily waive his right to a hearing. I think in the standard of review if this court determines based on the record that that was an intentional relinquishment of his right to that hearing that's a waiver for appellate purposes and that's that's what I think the record bears out. But even if it was you know even if he neglected to you know raise an objection or the court were to find that the statement that's a lie preserves it whether it's de novo plain error or not the record is clear that there was a hearing just before the revocation hearing. Judge Stark told the defendant it's your choice and your choice alone whether to waive this hearing. Defendant spoke through counsel at the revocation hearing which is not inconsistent with rule 32.1 which says a hearing should be had unless waived by the person. Would it have been better if he had been asked defendant to confirm? Of course we wouldn't hope we probably wouldn't be having this discussion but when the defendant was given a chance to speak two days later he said I accepted responsibility for using drugs and and you juxtapose that with what he said about the MCC fight and the gun violation where he continued to deny that he ever committed those acts and Judge Stark ultimately imposed a sentence of 36 months in part because in his words you're refusing to accept responsibility. And so I don't think there were any legitimate question during the proceedings that the defendant disagreed that he had used narcotics at the Salvation Army or that he had failed to participate there because as I've said at least twice so far he was ejected from the program which is what then sparked Judge Feinerman's order detaining him at the MCC. And so the record is clear in my mind that the defendant was not seeking to contest the fact that he had used drugs. There were two positive drug tests that supported that. He had confessed it to his probation officer and there was no dispute that he had been discharged from the program which is why Judge Feinerman had to do what he did in sending him to the MCC. And so on the last point concerning whether Judge Stark either you know committed clear error in finding that the defendant knowingly possessed a firearm or somehow committed procedural error in misunderstanding the evidence the record is clear that Judge Stark was not confused and I would direct the court's docket 604 at page 15. That is at the July 12th evidentiary hearing where the AUSA tells Judge Stark expressly that the claim regarding the arrest warrant and that being the basis for his flight when the police arrived was made during closing argument at the state trial. Closing argument is the phrase that he used and he goes on to cite the page of the trial transcript for Judge Stark who had who had the transcript as an exhibit. And so two days later when Judge Stark provides his reasons for finding that he knowingly possessed that firearm he correctly calls it the argument that was made at trial. I mean there was there was no confusion and in response to the the question raised by defense counsel well why would he address it at all if it wasn't something the defendant said. I mean this is a very thorough district judge who over the course of seven pages explained why he was making a finding that was contrary to a jury. You know it explained that there was a 9-1-1 call that the jury hadn't heard for hearsay reasons and of course in that context he's going to explain not just why the evidence was overwhelming in his view which included the 9-1-1 call, the surveillance tape, the way he held the bag, his relationship with the woman who owned it, the fact that he knew that it contained insulin and the false excuses he made about drugs. But he's going to explain why the closing argument that carried the day for the jury was not persuasive to him and and I think it's clear that that's precisely what he was doing. So the court's finding was not clearly erroneous. It was not based on any procedural defect and unless the panel has any questions about any of the issues raised this morning I would ask that the court affirm the findings of the district court in the sentence that was proposed. Thank you very much Mr. Kerwin. Mr. Roy will go back to you with two minutes for rebuttal. Thank you. There's a couple points I want to address. The first is the the government argues that the revocation in IDOC was for Mr. Harris's earlier Illinois conviction for heroin possession because it had the same case number. I don't think the case number is very probative. This appeal, the district court case number, is the same case number as Mr. Harris's 2018 federal conviction. We haven't talked about that conviction at all on appeal because this appeal is about the revocation. Same with Illinois state revocation. He's revoked, he's in prison for the state revocation not for his original heroin possession. The government argues that Block is fundamentally distinct because the facts were different and we recognize the facts of Block were somewhat different than this case but it's the reasoning of Block that favors our interpretation here where in Block this court pointed out that a revocation of federal supervised release is a determination on how to serve the supervised release. It was drawing from the Supreme Court's decision in Johnson and it said that was why it did not toll under 3564E. That's also consistent with the text of 3624. It's also consistent with the text of 3624 which says that supervised release should always be concurrent to federal supervised release. In terms of the warrant requirement, the government points out in some of the other cases discussion about notice or whether it made practical sense. As this court said in Block however, the warrant requirements are a bright line jurisdictional rule. In Block this court even says that it doesn't necessarily make the most sense because the defendant does know already about the violation but that's not the point. The point is that it's how Congress delineated jurisdiction to hear revocation hearings. It created a bright line rule and that's just the end of it. Notice comes in more with the actual petitions. A good example is in this case where the petitions to the court described the violations. Defendant had notice but did not describe the NCC fight so the government was not able to pursue that during the hearing. Unless there's any further questions I will take a leave. Thank you very much Mr. Roy. Thank you Mr. Kerwin. The case will be taken under revisement.